Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Nicholas D. Acedo, Bar No. 021644
Jacob B. Lee, Bar No. 030371
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
jlee@strucklove.com

*Attorneys for Defendant-Respondent Kris Kline*

MICHAEL BAILEY
United States Attorney
District of Arizona
WILLIAM C. STAES
Assistant United States Attorney
Illinois State Bar No. 6314835
40 North Central Avenue, Suite 1800
Phoenix, AZ  85004-4449
Telephone:  (602) 514-7500
Fax:  (602) 514-7693
William.Staes@usdoj.gov

*Attorneys for Defendants-Respondents
David Gonzales, Donald Washington,
and Michael Carvajal*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Guadalupe Lucero-Gonzalez, et al., | NO. CV-20-00901-PHX-DJH (DMF) |
| Plaintiffs-Petitioners, | **DEFENDANTS-RESPONDENTS' JOINT RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION (Dkt. 3)** |
| v. | |
| Kris Kline, et al., | |
| Defendants-Respondents. | |

Defendants-Respondents Kris Kline, Warden of the Central Arizona Florence Correctional Complex ("CAFCC"); David Gonzales, U.S. Marshal for the District of Arizona; Donald W. Washington, Director of the U.S. Marshals Service ("USMS"); and Michael Carvajal, Director of the Federal Bureau of Prisons ("BOP"), through their respective counsel, oppose Plaintiffs-Petitioners' Motion for Class Certification. Plaintiffs fall woefully short of demonstrating compliance with Rule 23's certification requirements. The Class Representatives are inadequate and atypical. Their claims are not capable of generating classwide answers. And a single classwide injunction and declaration cannot be tailored. At a minimum, Plaintiffs' request for release is not certifiable, and their request for provisional certification is moot. The Motion should be denied.

## I.    Factual and Procedural Background.

On May 8, 2020, Plaintiffs filed a Class-Action Complaint for Declaratory and Injunctive Relief and Petition for Writs of Habeas Corpus ("Complaint"), a Motion for Preliminary Injunction, and a Motion for Class Certification. (Dkt. 1, 2, 3.) All three were supported with the *un*sworn declarations of the five named Plaintiffs (Dkt. 1-5 through Dkt. 1-9), the declarations of an Assistant Federal Public Defender (Dkt. 1-3; *see also* Dkt. 18-1 at 8–10), and the declaration of their expert (Dkt. 1-4; *see also* Dkt. 18-1 at 2–6). Their Motion for Class Certification was also supported by declarations from three of their counsel. (Dkt. 3-2 through Dkt. 3-4.)

Plaintiffs are federal pretrial detainees or post-conviction prisoners who are or were detained at CAFCC. (Dkt. 1, ¶¶ 2, 19–23.) They allege that the "conditions and policies at [CAFCC] expose [them] to unreasonable risk of contracting COVID-19," in violation of their Fifth and Eighth Amendment rights. (*Id.*, ¶¶ 44–45, 80–103.) Plaintiffs Romero-Lorenzo, Peuplie, Ciecierski, and Enos seek to represent the Pretrial Class, consisting of "[a]ll current and future persons … in pretrial detention at [CAFCC]." (*Id.*, ¶¶ 70; Dkt. 3 at 2 & n.1.) Plaintiff Lucero-Gonzalez seeks to represent the Post-Conviction Class, consisting of "[a]ll current and future persons … in post-conviction detention at [CAFCC]." (*Id.*, ¶ 71; Dkt. 3 at 2 & n.2.)

After reviewing Plaintiffs' evidence and Defendants' rebuttal evidence, the Court denied Plaintiffs' request for a preliminary injunction, finding Plaintiffs failed to demonstrate a violation of their constitutional rights.  (Dkt. 29.)   Regarding the Fifth Amendment claim, the Court "conclude[d] that Defendants' policies related to COVID-19 at CAFCC have not been, objectively, deliberately indifferent to Plaintiffs' health or safety. Rather, Defendants' policies reflect the recommendations from the CDC, and have been implemented without unreasonable delay as the CDC's recommendations have been promulgated and updated." (*Id*. at 17.)   Regarding Plaintiffs' Eighth Amendment claim, the Court concluded that the evidence did not demonstrate that Defendants' policies were "objectively insufficient and subjectively deliberately indifferent" to Plaintiffs' health and safety.  (*Id*. at 14.)

After these rulings, Defendants moved the Court to suspend briefing on Plaintiffs' Motion for Class Certification so that the litigation could follow the normal course, including allowing class discovery.  (Dkt. 37.)  Plaintiffs opposed that request.  (Dkt. 42-1.)  The Court did not suspend briefing, but did extend the response deadline to align with Defendants' deadline to answer the Complaint.  (Dkt. 44.)

Several days before filing this Joint Response, Defendants' counsel asked Plaintiffs' counsel if they intended to "stand by the proposed classes and your arguments and evidence" or if they would "like an opportunity to withdraw and refile" it with additional evidence. (Exhibit 1.)  Defendants' counsel also advised that Lucero-Gonzalez has been released from CAFCC and Romero-Lorenzo has been adjudicated guilty and is no longer a pretrial detainee.  Plaintiffs' counsel informed that they were standing by their already filed Motion and evidence, and would not file an amended complaint.

Defendants support this Opposition with all of their previously filed declarations and evidence.  The extensive measures taken by Defendants to protect the detainees, inmates, and staff at CAFCC from exposure to COVID-19 are outlined in their Opposition to the Motion for Preliminary Injunction (Dkt. 16) and the declarations of Warden Kline (Dkt. 16-3, 23-1) and Dr. Ivens (Dkt. 16-2), and are incorporated here.   Defendants further

incorporate the declaration of Warden Kline filed on August 11, 2020. (Dkt. 48-1.) That declaration explains CAFCC's new policy, effective August 4, 2020, requiring testing of any detainee who has been in close contact with a confirmed COVID-19 positive individual, consistent with recently amended CDC recommendations. (*Id*., ¶ 14.) Detainees are also now required to wear face masks any time they are outside their housing units (*id*., ¶ 89), and have been provided additional education regarding COVID-19 prevention (*id*., ¶ 95).

Since the first positive detainee was identified on May 1, 2020 (and through August 7, 2020), there have been a total of 323 detainees and 146 staff members who have tested positive for COVID-19 at CAFCC; 11 detainees have been hospitalized due to COVID-19 and one detainee died (on July 30, 2020). (*Id*., ¶¶ 15, 18.) On August 7, 2020, however, there were only 17 detainees (out of 3,380) and 11 staff (out of 880) who were positive for COVID-19 at CAFCC. (*Id*., ¶¶ 12, 15, 19.) Since March 19, 2020, CAFCC receives approximately 5–10 new detainees each day, and has had an average daily population of 3,375 detainees. (*Id*., ¶¶ 13, 61.) CAFCC is currently operating at 68% design capacity. (*Id*., ¶ 12.)

## II.    The Standard for Class Certification.

Plaintiffs' burden to certify any class is extraordinarily high. "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. (emphasis in original). In addition, the Court cannot simply default to certification orders in other, similar cases. It must conduct a "rigorous analysis" and conclude that Plaintiffs have established each Rule 23 element. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011).

Rule 23(a) consists of four elements—numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)–(4). Since Plaintiffs seek injunctive relief, they must also satisfy Rule 23(b)(2), which requires proof that Defendants "acted or refused to act on

grounds that generally apply to the class."[1]  Fed. R. Civ. P. 23(b)(2).  Failure to meet "any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

## III.    The Court Should Not Certify Either Putative Class.

Defendants do not contest numerosity, but Plaintiffs have failed to establish any other Rule 23 element.  Although Plaintiffs were permitted to rely on unsworn declarations and hearsay testimony in conjunction with their request for preliminary injunction, that is not enough for class certification. *Wal-Mart Stores*, 564 U.S. at 350.  They have failed to *affirmatively prove* typicality, adequacy, commonality, or Rule 23(b)(2).

### A.    Plaintiffs Have Not Satisfied Typicality or Adequacy.

"A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (a "class representative must be part of the class").  If a named plaintiff is not a member of the class, she lacks typicality and therefore may not seek relief on their behalf. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

If a named plaintiff is a member of the defined class, they may serve as a representative only if: (1) they have suffered "the same or similar injury," *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); (2) they do not "'have any conflicts of interest with other class members,'" *Ellis*, 657 F.3d at 985 (citation omitted); and (3) they will "'prosecute the action vigorously on behalf of the class,'" *id*. (citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism

---

[1] In a footnote, Plaintiffs state that they "also satisfy Rule 23(b)(1) because requiring hundreds of individual class members to prosecute separate actions on the same claims would create a significant risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants." (Dkt. 3 at 12 n.3.) But they do not provide any argument or authority to support that assertion. Merely reciting the Rule and conclusively stating they have satisfied it is not enough to satisfy their burden to "affirmatively demonstrate" compliance with this element. *Wal-Mart*, 564 U.S. at 350.

between representatives and absentees, and a sharing of interest between representatives and absentees." *Id*.; *see also* Fed. R. Civ. P. 23(a)(4) (class representatives must "fairly and adequately protect the interests of the class"). A named plaintiff should not represent a class if they are subject to "unique defenses." *Hanon*, 976 F.2d at 508; *see also Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (holding district court correctly applied Rule 23 in finding named plaintiff could not adequately represent the class because he was "subject to unique defenses"); *Williams v. Warner Music Grp. Corp.*, 2020 WL 1270331, at *4 n.2 (C.D. Cal. Feb. 27, 2020) (noting that the "unique defenses" inquiry can go to either typicality or adequacy elements).

### 1. The only Proposed Class Representative for the Post-Conviction Class—Plaintiff Lucero-Gonzalez—is no longer a member of that Class.

The Post-Conviction Class is defined as all "persons … in post-conviction detention at [CAFCC]." (Dkt. 1, ¶¶ 2, 71; Dkt. 3 at 2 & n.2.) Plaintiffs selected Lucero-Gonzalez to represent this Class. (*Id*.) But on August 7, 2020, Lucero-Gonzalez was sentenced to time served, *see* No. 4:19-cr-03359-JGZ-BGM-1, Dkt. 48, and on August 8, she was released from CAFCC (Dkt. 48-1, ¶ 136). Because she is no longer detained at CAFCC, she is not a member of the Post-Conviction Class and therefore lacks typicality and adequacy. *See NEI Contracting*, 926 F.3d at 532; *see also Parsons v. Ryan*, 289 F.R.D. 513, 524 (D. Ariz. 2013) ("The Court agrees that Parsons' release undermines his adequacy as a Class representative and he will be dismissed."). Consequently, the Post-Conviction Class cannot be certified. *See also B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("A class of plaintiffs does not have standing to sue if the named plaintiff does not have standing.").

Any attempt by Plaintiffs to argue that there is "'a sufficient likelihood that [Lucero-Gonzalez] will again be wronged in a similar way,'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)), is unavailing. To do so, Plaintiffs "must establish a 'real and immediate threat of repeated injury.'" *Fortyune v.*

5

*Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *O'Shea*, 414 U.S. at 496). "[T]he threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "In other words, the 'threatened injury must be certainly impending to constitute injury in fact' and 'allegations of possible future injury are not sufficient.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Lucero-Gonzalez has served her sentence and has been released from CAFCC. Any assertion that she may at some point in the future commit a federal crime, be arrested and charged, and then detained at CAFCC again are too speculative to retain standing to pursue prospective relief in this lawsuit. *See Lyons*, 461 U.S. at 108 (holding that it "is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse. And it is speculation to assert either that Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury"); *O'Shea*, 414 U.S. at 497 ("[W]e are nonetheless unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners."); *Diamond v. Corizon Health, Inc.*, 2016 WL 7034036, at *5 (N.D. Cal. Dec. 2, 2016) (holding that a former detainee did not have standing to bring injunctive relief claim where the alleged threat of future injury first required his arrest and placement in jail).

Finally, Plaintiffs cannot substitute a new class representative at this point because Lucero-Gonzalez's claim became moot before any certification of the Post-Conviction Class. *See Kuahulu v. Employers Ins. of Wausau*, 557 F.2d 1334, 1337 (9th Cir. 1977)

("But where the class was not certified before appellant's claim became moot, *Board of School Commissioners of the City of Indianapolis v. Jacobs* (1975) 420 U.S. 128, 129 … requires us to dismiss the entire appeal as moot."); *accord Garcia v. Lane Bryant, Inc.*, 2012 WL 293544, at *4 (E.D. Cal. Jan. 31, 2012); *Velazquez v. GMAC Mortg. Corp.*, 2009 WL 2959838, at *3 (C.D. Cal. Sept. 10, 2009). And Plaintiffs' counsel knew her claim was moot before Defendants filed this Response, but did not amend their Complaint. *Id.*

## 2. Plaintiff Romero-Lorenzo is no longer a member of the Pretrial Class.

The Pretrial Class is defined as all "persons … in pretrial detention at Central Arizona Florence Correctional Complex." (Dkt. 1, ¶ 70; Dkt. 3 at 2 & n.2.) Romero-Lorenzo was selected to be one of the Class Representatives. (*Id.*) But on July 20, 2020, Romero-Lorenzo pleaded guilty and was sentenced to 10 months' imprisonment. (Dkt. 48-2.) Thus, she is no longer a pretrial detainee or a member of the Pretrial Class. Any assertion that Romero-Lorenzo will at some point in the future be a pretrial detainee at CAFCC is conjecture. Consequently, she lacks standing, typicality, and adequacy, and cannot be a Class Representative, and Plaintiffs cannot substitute another class representative because Romero-Lorenzo's claim mooted before any certification of the Pretrial Class, a fact Plaintiffs' counsel was aware of. *Kuahulu*, 557 F.2d at 1337.

## 3. Plaintiffs' requests for their release creates an inherent conflict of interest.

Plaintiffs request a permanent injunction ensuring for "all detainees" adequate social distancing, hygiene supplies, personal protective equipment, quarantine protocols, and testing procedures, and adequate daily cleaning of surfaces. (Dkt. 1, Prayer for Relief, ¶¶ 5.b-f.) But if such measures are not effective, Plaintiffs request that *they* be released. (*Id.*, ¶ 6.) This creates a perverse incentive for Plaintiffs to argue that no set of measures can adequately protect all detainees (the Classes), requiring the Court to order Plaintiffs release, instead of strenuously arguing for injunctive relief that they contend would benefit the Classes. This conflict of interest presents "serious questions" regarding Plaintiffs' adequacy to protect their interests. *See Wilson v. Conair Corp.*, 2016 WL 7742772, at *4

7

1  (E.D. Cal. June 3, 2016) (finding potential conflict of interest destroyed adequacy where

2  there was a "substantial risk that plaintiff [had] different priorities and litigation incentives

3  than the class members"); *Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 524

4  (W.D. Wash. 2008) (class representative's lack of incentive to pursue classwide relief raised

5  "serious questions" regarding its adequacy to represent the class).

**4.    There is no evidence that Plaintiffs will vigorously represent the class.**

6

7

8         Plaintiffs assert that they have the "requisite personal interest in the outcome of this

9  case" (Dkt. 3 at 11), but there is no evidence to affirmatively *prove* it.  None of their

10  unsworn declarations suggests that they are aware of their responsibilities as Class

11  Representatives or willing to take on that role, much less that they have been designated as

12  such by their counsel.  (*See* Dkt. 1-5 through Dkt. 1-9.)  Rather, each have stated that they

13  are anxious to be released.  (*Id.*)  Only two Plaintiffs would remain in Arizona.  (Dkt. 1-8

14  [Ciecierski]; Dkt. 1-9 [Enos].)

15         Plaintiff Romero-Lorenzo is disqualifying for an additional reason: her demonstrated

16  dishonesty.  "The credibility and honesty of a class representative are relevant 'because an

17  untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.'"

18  *Wilson*, 2016 WL 7742772, at *4 (quoting *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d

19  996, 1015 (N.D. Cal. 2010)) (citation omitted).  As explained in Defendants' Joint Notice

20  Re: Identity of Claudia Romero-Lorenzo (Dkt. 27), Romero-Lorenzo told USMS and a

21  magistrate judge that her name was Romero-Lopez.  She subsequently admitted that her

22  real name was Romero-Lorenzo.  (*Id.*)  She should not represent any Class.  *See Bohn v.*

23  *Pharmavite, LLC*, 2013 WL 4517895, at *1 (C.D. Cal. Aug. 7, 2013) (quoting *Harris*, 753

24  F. Supp. 2d at 1015) (inadequacy established if there are "confirmed examples of

25  dishonesty").

**5.    Each Plaintiff is subject to unique defenses.**

26

27         In addition to the standing and mootness issues that Plaintiffs will face, each one is

28  subject to a unique exhaustion defense, which they must overcome.  *Navellier*, 262 F.3d at

941. As Defendants argued in their Joint Response to Plaintiffs' Motion for Preliminary Injunction, none of the Plaintiffs exhausted their administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Dkt. 16 at 13–14; Dkt. 16-8; Dkt. 23-2.) Plaintiffs contend that they did. (Dkt. 18 at 6–9.) The Court presumably did not reach this issue because it denied a preliminary injunction on other grounds. (Dkt. 29.) If Plaintiffs' Complaint survives Defendants' Motion to Dismiss (Dkt. 48), Defendants will raise the defense again. And if Plaintiffs did not exhaust available administrative remedies before filing suit, their claims are barred. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199–1201 (9th Cir. 2002). This hotly contested issue will become a major focus of the litigation, and each Plaintiff will have to separately establish compliance with the PLRA, a highly individualized inquiry. (Dkt. 16-8: Dkt. 23-3.) This presents yet another conflict of interest for Plaintiffs and defeats adequacy. *See Hanon*, 976 F.3d at 508 (class certification should be denied "if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it'") (citation omitted); *Amador v. Superintendents of Dep't of Corr. Servs.*, 2005 WL 2234050, at *9 (S.D.N.Y. Sept. 13, 2005) (PLRA exhaustion defense can defeat adequacy).

### B.    Plaintiffs Have Not Satisfied Commonality or Rule 23(b)(2).

For purposes of commonality, it is not enough to simply allege that all class members share the same characteristics—for example, that they have the same employer or make the same request for relief. *See Wal-Mart*, 564 U.S. at 349–50 ("Reciting these questions is not sufficient to obtain class certification."). (*See also* Dkt. 3 at 7 ["all are (or will be) confined at CoreCivic"].) Nor is it enough to allege "that they have all suffered a violation of the same provision of law." *Id.* (*See also* Dkt. 3 at 3 ["[D]o those actions and inactions fall below minimum constitutional standards?"].) Such claims "give[] no cause to believe that all their claims can productively be litigated at once." *Id.* A qualifying common question must be able to generate an answer that "resolve[s] an issue that is central to the validity of each" class member's claim "in one stroke." *Id.* Dissimilarities within a proposed class potentially impede the generation of common answers. *Id.*

9

The commonality requirement is especially rigorous when seeking classwide injunctive relief based on an alleged policy or practice.  In that instance, a plaintiff must present "significant proof" that the alleged practice in fact exists and that the entire class was subjected to it.  *Wal-Mart*, 564 U.S. at 353; *Ellis*, 657 F.3d at 983.  Moreover, Rule 23(b)(2) certification is appropriate only when the alleged conduct "is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360.  "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

The commonality analysis begins with and "necessarily depends on the nature of the underlying legal claims that the class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  Plaintiffs do not distinguish between their Fifth and Eighth Amendment claims, and instead rely almost exclusively on the Ninth Circuit's decision in *Parsons v. Ryan*, 754 F.3d 657, 662 (9th Cir. 2014), a case involving only an Eighth Amendment claim.

At first blush, Plaintiffs' Eighth Amendment claims seems impossible to resolve on a classwide basis.  Individual inquiries abound.  Whether a detainee is exposed to a "*substantial* risk of *serious* harm," *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (emphasis added), necessarily requires a case-by-case evaluation of, *inter alia*, the detainee's age, preexisting medical conditions, and exposure to COVID-19.  *See Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 544–56 (7th Cir. 2016) (affirming decertification of class of "[a]ll persons presently confined at [a] jail who are experiencing dental pain" on ground that claims could "only be answered by looking at the unique facts of each detainee's case"); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (in the context of conditions claims, "[t]he circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred").

*Parsons*, however, affirmed class certification of an Eighth Amendment claim alleging systemic deficiencies in the Arizona Department of Corrections' provision of

healthcare.  The court held that commonality was satisfied simply because all class members were exposed to the same policies or practices, and, therefore, whether those policies and practices exposed them to a substantial risk of serious harm could be resolved in one stroke.  *Parsons*, 754 F.3d at 678–79.  "[E]ither each of the policies and practices is unlawful as to every inmate or it is not."  *Id.*

Defendants do not dispute that the Court is bound by *Parsons*.[2]  But *Parsons* does not compel a finding of commonality in this case for at least two reasons.

First, *Parsons* made clear that a finding of commonality based on a systemic-deficiency theory must be based on "sufficient evidence of systemic and centralized policies or practices in a prison system that allegedly expose all inmates in that system to a substantial risk of serious future harm."  *Id.* at 683–84.  In *Parsons*, the inmates exceeded that requirement—they submitted "four thorough and unrebutted expert reports, the detailed allegations in the 74-page complaint, hundreds of internal ADC documents, and declarations by the named plaintiffs"; the defendants' "near-utter[ly] fail[ed] to respond to it with evidence of their own."  *Id.* at 663–672, 683 & n.29.  The evidence thus "adequately demonstrated the existence of the challenged statewide policies and practices."  *Id.*

By contrast, Plaintiffs' declarations regarding the alleged conditions are unsworn (Dkt. 1-5 through Dkt. 1-9); the declarations of Ms. Woehr rely largely on untested hearsay (Dkt. 1-3; Dkt. 18-1 at 8–10); and the declarations of Dr. Goldenson—Plaintiffs' only expert—hardly speaks to the conditions at CAFCC (Dkt. 1-4; Dkt. 18-1 at 2–6), and the handful of avowals that do pertain to CAFCC were thoroughly rebutted by Defendants' experts and evidence (Dkt. 16-1, 16-2, 16-3, 16-4 through 16-7; Dkt. 23-1).  This is "worlds away" from the requisite "significant proof" of the alleged unconstitutional practices.  *Wal-*

---

[2] *But see Parsons v. Ryan*, 784 F.3d 571, 573 (9th Cir. 2015) (Ikuta, J., joined by five judges, dissenting from the denial of rehearing en banc) (stating that the panel's decision "endorses a view of the Eighth Amendment and class actions that is at odds with the binding authority of the Supreme Court"); *Sabata v. Nebraska Dep't of Corr. Servs.*, 2020 WL 3047479, at *46 (D. Neb. June 8, 2020) (disagreeing with *Parsons* and ruling: "Under the Ninth Circuit's logic, almost any disparate group of plaintiffs could be certified as a class by reducing the relevant inquiry to an oversimplified question of 'legality' and ignoring the pesky facts and details that might differentiate class members.").

1    *Mart*, 564 U.S. at 355; *see also Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019)

2    ("Allegations of individual instances of mistreatment, without sufficient evidence, do not

3    constitute a systemic deficiency or overarching policy of wrongdoing."); *Civil Rights Educ.*

4    *& Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1104 (9th Cir. 2017) ("[M]erely

5    pointing to a pattern of harm, untethered to the defendant's conduct, is insufficient.").  In

6    fact, after reviewing all this evidence, the Court concluded that Plaintiffs failed to establish

7    either a Fifth or Eighth Amendment violation.  (Dkt. 29.)  And as discussed in Section I,

8    CAFCC has taken *additional* precautionary measures since that ruling.

9          Second, *Parsons* disregarded the effect of the systemically deficient practices on

10   each inmate, which removed the necessity of individualized determinations, because at

11   some point they would *eventually* need to rely on the system for medical care:

12              And any one of them could easily fall ill, be injured, need to fill
                a prescription, require emergency or specialist care, crack a
13              tooth, or require mental health treatment. It would indeed be
                surprising if any given inmate did *not* experience such a health
14              care need while serving his sentence. … [I]nadequate health
                care in a prison system endangers every inmate: [e]ven
15              prisoners with no present physical or  mental illness may
                become afflicted, and all prisoners … are at risk so long as the
16              State continues to provide inadequate care.  Prisoners who are
                not sick or mentally ill … are that system's next potential
17              victims.

18   754 F.3d at 678 (internal quotations and citation omitted).  This case is different.  It is

19   contingent on "the dangers posed by COVID-19."  (Dkt. 1, ¶ 2.)  But as even Plaintiffs

20   acknowledge, not everyone who contracts COVID-19 is impacted in the same way and

21   many have no symptoms at all.  (Dkt. 1-4, ¶ 31 ["infected individuals may experience only

22   mild symptoms"], ¶ 35 ["there are likely many asymptomatic individuals"], ¶ 40 ["close to

23   95% of those who tested positive [at an Ohio facility] were asymptomatic"].)  Indeed,

24   studies suggest that at least 40% of individuals who test positive for COVID-19 are

25   asymptomatic.[3]  Moreover, any resulting health effects depend on a variety of factors,

26   _____

27         [3] *See, e.g.*, Enrico Lavezzo el al., *Suppression of a SARS-CoV-2 outbreak in the Italian municipality of Vo'*, Nature (June 30, 2020),
     https://www.nature.com/articles/s41586-020-2488-1, last visited Aug. 11, 2020 ("Our
28   finding that 42.5% (95% CI: 31.5–54.6%) of all confirmed SARS-CoV-2 infections across

including age, underlying medical conditions, and race,[4] and even the CDC concedes that the "impact" of any particular medical condition is still uncertain. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 11, 2020).

Thus, the relevant question is not whether "Defendants' policies and practices fail to protect the class members from COVID-19 exposure and infection." (Dkt. 3 at 6.) Even exposure and infection can result in no harm. The question that will "drive the resolution of the litigation," *Wal-Mart*, 564 U.S. at 350, is whether every detainee is at substantial risk of serious harm *even if* they contract COVID-19. To answer that question will require an individualized determination of each detainee's circumstance. That defeats commonality, and a blanket injunction runs afoul of Rule 23(b)(2).

Plaintiffs make no attempt to show commonality on their Fifth Amendment claim. *Parsons* does not help them because it did not involve the same due process theories. And simply citing other cases that certified Fifth Amendment claims (in the immigration detention context) hardly demonstrates commonality in this case. *See Richey v. Matanuska-*

---

the two surveys were asymptomatic is in accordance with other population surveys."); Daniel Oran & Eric Topol, *Prevalence of Asymptomatic SARS-CoV-2 Infection*, Annals of Internal Medicine (Jun. 3, 2020), https://www.acpjournals.org/doi/10.7326/M20-3012, last visited Aug. 11, 2020 ("Asymptomatic persons seem to account for approximately 40% to 45% of SARS-CoV-2 infections …").

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html, last visited Aug. 11, 2020 (reporting that "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years old and older"); https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm, (for week ending August 1, 2020, 82% of all COVID-19 deaths involved individuals who were 65 years old or older, 13% involved individuals between 55 and 64 years old, and 4% involved individuals between the ages of 45 and 65 years old); https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html#hospitalizations (based on data through July 25, 2020, hospitalization rate for persons 65 years old and older is 360.2 per 100,000; hospitalization rate for persons between 50 and 64 years old is 196.3 per 100,000; hospitalization rate for persons between 18 and 49 years old is 85.5 per 100,000; hospitalization rate for non-Hispanic Blacks and Hispanic or Latinos was 265.1 and 266.6 per 100,000, respectively; and hospitalization rate for non-Hispanic Asian or Pacific Islander and non-Hispanic White was 72.8 and 56.5 per 100,000, respectively); https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html#hospitalizations (based on data through July 25, 2020, 90.8% of laboratory-confirmed COVID-19 adult hospitalizations reported at least one underlying medical condition).

1   *Susitna Borough*, 2015 WL 1542546, at \*5 (D. Alaska Apr. 7, 2015) (plaintiffs failed to

2   meet their burden of demonstrating commonality where they failed to identify the elements

3   of their claims or explain why a determination of their proposed common questions was

4   central to the validity of them).

5          Nonetheless, Plaintiffs' Fifth Amendment claim fails commonality for the same

6   reasons.  Like their Eighth Amendment claim, a due process claim requires proof that "the

7   conditions under which the plaintiff was confined … put the plaintiff at substantial risk of

8   suffering serious harm." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

9   They must also show that the defendant's conduct in failing to abate the risk of harm was

10  "objectively unreasonable." *Id.*  That inquiry "turns on the 'facts and circumstances of each

11  particular case," including each putative class member's age, medical history, and unique

12  risk profile. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *Gordon*, 888 F.3d at

13  1125; *see also Derron B. v. Tsoukaris*, 2020 WL 2079300, at \*8 (D.N.J. Apr. 30, 2020)

14  ("[A] petitioner's individual circumstances … are critical to the [Fifth Amendment]

15  analysis.").  Indeed, the Supreme Court has recently questioned whether a due process claim

16  can ever be resolved in a class action since such claims are best resolved on a case-by-case

17  basis. *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018).  Plaintiffs' due process claim is

18  not capable of classwide resolution.  *See C.G.B. v. Wolf*, 2020 WL 2935111, at \*16–19

19  (D.D.C. June 2, 2020) (ruling detainees' "varying levels of susceptibility to COVID-19"

20  precluded certification of Fifth Amendment claim).[5]

21          **C.     At a Minimum, the Court Should Not Certify a Class that Seeks Release.**

22          As noted above, it does not appear that Plaintiffs seek classwide release, but even if

23  they did seek classwide release, such relief could not be certified.  Under the PLRA, in

---

24          [5] Although Plaintiffs' Complaint alternatively raises an "intent to punish" theory, *see*
25  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (conditions amount to punishment only if
    defendant acted with "express intent" to punish that is not "reasonably related to a legitimate
26  governmental objective"), their Motion makes no attempt to certify it. (Dkt. 3.) Therefore,
    they have waived certification of that theory. Defendants note that any impermissible
27  punishment claim cannot be certified, as it requires an evaluation of whether detention is
    excessive in relation to a legitimate government interest (Dkt. 1, ¶ 83), which necessarily
28  turns on each detainee's unique criminal background, flight risk, and medical history.

granting any prospective relief "in any civil action with respect to prison conditions," a court must "give substantial weight to any adverse impact on public safety." 18 U.S.C. §§ 3626(a)(1)(A), (a)(2).[6] Thus, before releasing any class member, the Court must "consider the circumstances of the detained persons and any threat they pose to public safety, which plainly would vary from one person to another." *Mays v. Dart*, 2020 WL 1987007, at *20 (N.D. Ill. Apr. 27, 2020). Courts routinely find that this individualized inquiry necessarily defeats commonality and/or Rule 23(b)(2). *See Gayle v. Meade*, 2020 WL 3041326, at *43 (S.D. Fla. June 6, 2020) ("[T]he claims for release are inappropriate for class treatment because they do not meet the commonality element."); *Mays*, 2020 WL 1987007, at *20 ("This is a process that would render the claim unsuitable to certification under Rule 23(b)(2) or its analogy for representative actions.").

For example, the district court in *Money v. Pritzker*, 2020 WL 1820660, at *15 (N.D. Ill. Apr. 10, 2020), recognized that classwide release was inappropriate because "[e]ach putative class member comes with a unique situation—different crimes, sentences, outdates, disciplinary histories, age, medical history, places of incarceration, proximity to infected inmates, availability of a home landing spot, likelihood of transmitting the virus to someone at home detention, likelihood of violation or recidivism, and danger to the community." The "permutations here are endless" and "so vast and fundamental" that class treatment "is completely unworkable." *Id*. And in *Wragg v. Ortiz*, 2020 WL 2745247, at *28 (D.N.J. May 27, 2020), the district court ruled that it "seems extremely unlikely to this Court that the issues in common here are capable of class-wide resolution "in one stroke," short of ordering the BOP to throw open the gates of Fort Dix. Rather, the Court would be required to engage in an intensive, multi-step, individualized inquiry as to whether each prisoner met criteria for conditional release." *See also Gayle v. Meade*, 2020 WL 2744580, at *23 (S.D. Fla. May 22, 2020) ("Because release orders must be made individually, there cannot be a class-wide injunction for all detainees (i.e., there would not be one injunction

---

[6] As discussed in other filings, which Defendants incorporate here, the PLRA applies to Plaintiffs' claims. (Dkt. 16 at 18–21; Dkt. 48 at 10–11.)

1    requiring a mass release of all 1,214 detainees). Thus, Rule 23(b)(2) is inapplicable."); *id*.

2    at n.22 ("These assessments would have to be made on an individualized basis, which is

3    contrary to the class-wide requirement of Rule 23(b)(2) relief.").

4         Plaintiffs have been charged with different crimes, including intent to distribute

5    methamphetamine, bank robbery by force or violence, and aggravated sexual abuse.  (Dkt.

6    16 at 2–4.)  They have also already been denied bond, two because they posed a danger to

7    public safety.  (*Id*.)  The varying criminal histories and resulting threat to public safety that

8    each putative class member poses necessarily require a case-by-case determination as to

9    whether their release complies with the PLRA.  *See also* 18 U.S.C. §§ 3142(f)–(g) (Bail

10   Reform Act inquiry).  In addition, the Court will have to review whether each putative class

11   member can be released into a situation that will not place them or the general public at a

12   heightened risk of contracting COVID-19.  Those thousands of individual inquiries defeat

13   commonality, and because release orders cannot be made individually, there cannot be an

14   indivisible classwide injunction for all detainees, which defeats and Rule 23(b)(2).

15   **IV.    The Court Should Not Certify the Habeas Action.**

16        The Supreme Court "has never addressed whether habeas relief can be pursued in a

17   class action," *Jennings*, 138 S. Ct. at 858 n.7 (Thomas, J., concurring), and it does not appear

18   that Plaintiffs seek to certify the habeas aspect of their Complaint.  Plaintiffs' Complaint is

19   vague at best.  (Dkt. 1, ¶¶ 11, 14, 15, 17, 69–73 & Prayer for Relief, ¶ 6).  More importantly,

20   their Motion does not make any particular argument that the habeas aspect should be

21   certified.  (Dkt. 3.)  *See Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (noting

22   that, although the Ninth Circuit has permitted class certification in certain habeas actions,

23   it is "ordinarily disfavored").  Thus, they have not "affirmatively demonstrated" entitlement

24   to class certification.  *Wal-Mart*, 564 U.S. at 350.

25        Nonetheless, certification is not appropriate for all the reasons articulated in Section

26   III.  *See also Grinis v. Spaulding*, 2020 WL 3097360, at *4 (D. Mass. June 11, 2020) ("There

27   is nothing in the long history of the writ that would support permitting prisoner A to seek

28   the writ to effect prisoner B's discharge from custody …").  Furthermore, even assuming

the Court has jurisdiction to review Plaintiffs' habeas claims (Dkt. 48 at 7–10), one additional hurdle is that Plaintiffs must demonstrate that they exhausted their administrative remedies before filing their Petition. *See, e.g.*, *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) ("Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court."); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Alvarez-Caceres v. Kline*, 2020 WL 3064461, at *2 (D. Ariz. June 9, 2020); *Trevino v. Apker*, 2010 WL 5090486, at *1 (D. Ariz. Nov. 3, 2010), *report and recommendation adopted*, 2010 WL 5090472 (D. Ariz. Dec. 8, 2010). That unique, individualized defense will further detract from the merits of the class claims and defeats typicality and adequacy.

## V.  Plaintiffs' Request for Provisional Certification Is Moot.

The last section in Plaintiffs' Motion requests provisional certification of the Classes. (Dkt. 3 at 12-13.)  But as the cases they cite demonstrate, the purpose of provisional certification at the outset of litigation is to extend any granted preliminary injunctive relief to all putative class members.  *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041–43 (9th Cir. 2012)) ("We have approved provisional class certification for purposes of preliminary injunction proceedings.").

Here, the Court has denied Plaintiffs' requests for preliminary injunctive relief and no new requests are pending.  (Dkt. 6 at 4; Dkt. 29.)  Thus, the reason for provisional certification no longer exists. Their request should be denied. *See Alcantara v. Archambeault*, 2020 WL 4201665, at *3 n.1 (S.D. Cal. July 22, 2020) (denying motion for provisional certification in light of denial of request for preliminary injunctive relief); *id.*, ECF 83-1 at 42-43, filed June 12, 2020 (request for provisional certification).

## VI.  Conclusion.

For these reasons, Plaintiffs' Motion for Class Certification should be denied.

DATED this 12th day of August 2020.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By ___/s/ Nicholas D. Acedo_____
    Daniel P. Struck
    Rachel Love
    Nicholas D. Acedo
    Jacob B. Lee
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    *Attorneys for Defendant-Respondent Kris Kline*

    MICHAEL BAILEY
    United States Attorney
    District of Arizona

By ___/s/ William C. Staes_____
    William C. Staes
    Assistant United States Attorney

    *Attorneys for Defendants-Respondents David Gonzales, Donald W. Washington, and Michael Carvajal*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alejandro Agustin Ortiz | ortiza@aclu.org |
| Benjamin C. Calleros | bcalleros@perkinscoie.com |
| Emma A. Andersson | eandersson@aclu.org |
| Jean-Jacques Cabou | jcabou@perkinscoie.com |
| Margo R. Casselman | mcasselman@perkinscoie.com |
| Mathew R. Koerner | mkoerner@perkinscoie.com |
| Christine K. Wee | cwee@acluaz.org |
| Jared G. Keenan | jkeenan@acluaz.org |
| William Charles Staes | William.Staes@usdoj.gov |

/s/ Nicholas D. Acedo

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28