# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Guadalupe Lucero-Gonzalez, et al., | No. CV-20-0901-PHX-DJH (DMF) |
| Plaintiffs, | |
| v. | **ORDER** |
| Kris Kline, et al., | |
| Defendants. | |

This matter is before the Court on Plaintiffs' Motion for Accelerated and Expedited Discovery (Doc. 49). Upon request of Plaintiffs, and opposed by Defendants, the Court ordered expedited briefing and expedited consideration of Plaintiffs' motion (Docs. 50, 51, 54, 55). The parties have submitted expedited briefing (Docs. 49, 56, 57, 59). Counsel have complied with Local Rule 7.2(j). The motion (Doc. 49) is ripe and on referral to the undersigned United States Magistrate Judge pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 6 at 5).

**I.   PROCEDURAL HISTORY**

In summary, Plaintiffs allege in their May 8, 2020, Complaint (Doc. 1) that Defendants have violated their Fifth or Eighth Amendment rights by placing them at unconstitutional risk of exposure to COVID-19. Plaintiffs seek declaratory and injunctive relief and named as Defendants: CoreCivic's Central Arizona Florence Correctional Complex ("CAFCC") Warden Kris Kline; United States Marshal for the District of Arizona David Gonzales; Director of the United States Marshals Service Donald W. Washington;

and Director of the Federal Bureau of Prisons Michael Carvajal. All Defendants were sued in their official capacities. The Court screened the Complaint and required Defendants to answer the Complaint (Doc. 6 at 1-3).

Plaintiffs filed this action on behalf of themselves and a putative class consisting of all current and future persons held by Defendants Kline, Gonzales, and Washington in pretrial detention at CAFCC (the "Pretrial Class"), and all current and future persons held by Defendants Kline and Carvajal in post-conviction detention at [CAFCC] (the "Post-Conviction Class"), and moved for class certification when this action was initiated (Docs. 1, 3). The Court ordered that Defendants respond to Plaintiffs' Motion for Class Certification (Doc. 6 at 3).

Defendants moved to vacate briefing on Plaintiffs' motion for class certification, or, in the alternative, to extend time for response (Doc. 37). The motion requested that the "Court vacate further briefing on Plaintiffs' Motion for Class Certification" (Doc. 37 at 3), stating:

> [T]here is no need to brief the Motion for Class Certification on an expedited basis, much less right now. What is left is Plaintiffs' request for permanent injunctive relief. That request should follow the normal litigation path: Defendants will file an Answer or a Rule 12 Motion to Dismiss; if the claims proceed, the parties will propose a Rule 26 scheduling order and discovery plan, including a schedule for class certification discovery and briefing; and the parties will embark on that discovery.

(*Id.*). The Court did not vacate the briefing schedule as Defendants had requested, but extended time for responding to the motion for class certification to August 11, 2020 (Doc. 44). Defendants responded to the motion for class certification (Doc. 53), Plaintiffs replied (Doc. 58), and the motion for class certification is pending before the District Judge.

At the time of filing the Complaint, Plaintiffs moved for a temporary restraining order and preliminary injunction (Doc. 2). Plaintiffs sought that the Court appoint a Rule 706 expert to "lead a review of CoreCivic to determine whether Defendants have implemented consistent social (or physical) distancing, novel coronavirus testing procedures, and hygienic practices sufficient to reasonably protect Plaintiffs and Class

- 2 -

Members from contracting COVID-19 while in Defendants' custody," and, if not, to "submit to the Court … recommendations as to how such practices should be achieved and within what approximate timeline," and that Defendants be required to comply with and implement those recommendations (Docs. 2-1, 2). The Court required Defendants to respond to Plaintiffs' motion, and "given the time-sensitive nature of Plaintiffs' request and the harms alleged," the Court expedited briefing and hearing of Plaintiffs' motion (Doc. 6 at 4).

After briefing as well as submission of declarations and supporting materials, the Court held oral argument (Docs. 16, 18, 19, 21-28, 32). After taking the matter under advisement, the Court denied without prejudice Plaintiffs' motion for a temporary restraining order and for a preliminary injunction (Doc. 29). The Court concluded that "neither of the two classes of Plaintiff (pre-trial and post-conviction) have met their burden for preliminary injunctive relief" (*Id.* at 19). The Court noted that its denial of Plaintiffs' motion for preliminary injunction would be without prejudice, stating that "if circumstances develop to where Plaintiffs again believe irreparable harm may result without preliminary injunctive relief, they may seek such relief by new motion to this Court" (*Id.*).

Plaintiffs moved for reconsideration of the denial of Plaintiffs' motion for a temporary restraining order and for a preliminary injunction, requesting that the Court reconsider the applicability of the standard set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), to Plaintiffs' claims (Doc. 35). After briefing (Docs. 38, 39), the Court clarified that *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), was cited for illustrative purposes, explaining that "while the citation to *Monell* was erroneous as a matter of law, the analysis of Plaintiffs' claims against Defendants is functionally identical" (Doc. 45 at 3-4). The Court summarized the findings of its previous Order:

> Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their claims that Defendants' policies have been deliberately

- 3 -

>indifferent to Plaintiffs' health or safety (Doc. 26 at 14-15, 17-18), or that any delay or noncompliance with those policies was sufficiently unreasonable or widespread to amount to a de facto policy, practice, or custom that was deliberately indifferent to their health or safety (*id*. at 17-18, n.24) ("that Plaintiffs seek an expert to determine 'whether' Defendants have violated their rights smacks of a fishing expedition.").

(*Id.* at 4).

Defendants filed a motion to dismiss (Doc. 48), which is still in the response period.

## II. MOTION FOR ACCELERATED AND EXPEDITED DISCOVERY (Doc. 49)

In their motion for accelerated and expedited discovery, Plaintiffs assert that "conditions at CoreCivic Inc.'s Central Arizona Florence Correctional Complex ("CAFCC") have spiraled out of control" (Doc. 49 at 2). Plaintiffs assert that when they "first moved for injunctive relief, 13 detainees had tested positive for COVID-19; as of August 3, 2020, 313 detainees have tested positive[,]" representing "an 81.5% positivity rate, based on the 384 total COVID-19 tests that CAFCC has administered on detainees as of August 3, 2020" (*Id.*). Plaintiff state that "at least one detainee who contracted COVID-19 at CAFCC has died" (*Id.*).[1] Plaintiffs avow that they "are preparing to move for injunctive relief as soon as practicable" (*Id.*). Plaintiffs seek leave of Court to conduct "limited, expedited discovery that will neither prejudice nor unduly burden Defendants, but will materially aid the Court in understanding the circumstances at CAFCC" (*Id.*). Plaintiffs sum up the materials before the Court on their May 8, 2020, motion for preliminary injunctive relief:

>Defendants submitted lengthy written policies and declarations from high-level officials to argue that Plaintiffs' concerns did "not reflect at all the reality of what is actually happening at CAFCC or the significant efforts and measures [Defendants] have taken in response to COVID-19." (Doc. 16 at 5) For their part, Plaintiffs submitted their own declarations reporting a starkly different reality (Docs. 1-5, 1-6, 1-7, 1-8, 1-9; Doc. 18-1 at 8-10)[.]

(*Id.* at 3). For their May 8, 2020, motion for preliminary injunction, Plaintiffs state that they faced "inherent difficulty in accessing other evidence while detained and largely

---

[1] This is confirmed in Warden Kline's August 18, 2020 declaration submitted by Defendants (Doc. 56-1 at 26; Doc. 57-1 at 4).

- 4 -

isolated due to the COVID-19 pandemic" (*Id.*).

Plaintiffs seek permission to serve seven (7) interrogatories, seven (7) requests for production, and two (2) requests for admission, as well as take up to four-hour video depositions of Warden Kline and Dr. Ivens (Doc. 49-1 at 3-7). The proposed interrogatories seek contact information for staff members who left employment of CAFCC during the pandemic, data regarding COVID-19 testing of CAFCC detainees, data regarding CAFCC staff who have showed symptoms or tested positive for COVID-19, CAFCC's procedures for detainees to request sanitary supplies, CAFCC's contact tracing procedures, CAFCC's COVID-19 testing procedures, and CAFCC's cohorting and quarantining procedures (*Id.* at 3-5). The proposed requests for production seek documents provided by the U.S. Marshals Service at one specified meeting, surveillance footage from the common areas in two named Plaintiffs' pods for several specified days, CAFCC staff complaints regarding COVID-19 efforts at CAFCC, documents related to the hospitalization or death of three CAFCC staff, cleaning logs at CAFCC, documents regarding the strategy behind COVID-19 testing at CAFCC, as well as agenda and minutes for CAFCC's weekly "COVID Response Team" meetings. (*Id.* at 5-6). The proposed requests for admission seek admission of noncompliance with certain CDC guidelines and admission of short-staffing at CAFCC due to workers testing positive for COVID-19 (*Id.* at 6).

In their response (Doc 56), Defendants argue that accelerated, expedited discovery should not be allowed because: 1) Defendants have filed a meritorious motion to dismiss (*Id.* at 16-17; *see also Id.* at 6); 2) it is too early in the case for discovery given that Defendants filed a motion to dismiss filed in lieu of an answer *(Id.* at 5-7, 15); 3) there is no pending motion for preliminary injunction *(Id.* at 8-11); 4) "Plaintiffs' requested discovery does not seek to maintain the status quo, but rather seeks information to establish their claims and overcome the 'likelihood of success' prong of the preliminary injunction standard that their first motion failed to meet" *(Id.* at 10); 5) Plaintiffs want to use the discovery to "attempt to take a second bite at obtaining preliminary injunctive relief on a

more fully developed record" *(Id.)*; 6) "Defendants have already provided a detailed accounting of the policies and procedures that they have implemented at CAFCC in response to COVID-19" and the discovery is unnecessary *(Id.* at 11, 12-14); and 7) Plaintiffs have failed "to show why any of the information they seek is so critically important that Defendants must gather the overbroad and unduly burdensome information—on an expedited basis—and prepare and sit for depositions." *(Id.* at 14, 15-17; *see also Id.* at 13).

Defendants submitted an August 18, 2020, declaration of Warden Kline which stated that "[a]lthough CAFCC has had 87 new [COVID-19] cases the week ending July 11, 2020, the number of new cases confirmed each week has declined sharply since then, to only 4 new cases during the week ending August 15, 2020 (Doc. 56-1 at 25). Among other information presented in the declaration, Warden Kline stated that "[a]s of August 17, 2020, only 6 detainees at CAFCC were actively positive for COVID-19" *(Id.)*.

Defendants also submitted their proposed responses to the discovery requests Plaintiffs' seek to propound; Defendants' responses largely consist of pages of objections including that terms such as "identify", "left employment", "detainees", "exhibited", "staff members", "showed", and "cleaning supplies" are vague and ambiguous (Doc. 56-1 at 10-22).

## III. DISCUSSION

A court may authorize early, expedited discovery "in the interests of justice," Rule 26(d)(2), and where good cause is shown. *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz. 2001); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *see also Best W. Int'l, Inc. v. Doe*, CV-06-1537-PHX-DGC, 2006 WL 2091695, at *1 (D. Ariz. July 25, 2006). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. at 275 (adopting *Yokohama*'s good cause standard and noting that *Yokohama*'s holding was grounded in Ninth Circuit precedent that "applied the general

- 6 -

good cause standard employed in Rules 34 and 15"). For example, "[e]xpedited discovery has been ordered where it would 'better enable the court to judge the parties' interest and respective chances for success on the merits' at a preliminary injunction hearing." *Yokohama*, 202 F.R.D. at 613 (citation omitted); *see* Fed. R. Civ. P. 26(d) advisory committee's note to the 1993 amendment (expedited discovery appropriate "in some cases, such as those involving requests for a preliminary injunction").

Upon careful review and consideration of Plaintiffs' motion, the expedited briefing and supporting materials submitted by all parties, as well as the record in this matter, the Court grants in part Plaintiffs' motion for accelerated and expedited discovery (Doc. 49) as set forth in the orders section below. Granting limited accelerated and expedited discovery is not agreement with Plaintiffs that conditions at CAFCC have "spiraled out of control." Rather, there is a wide gulf between the policies and practices that Defendants describe and the failures in implementation described by Plaintiffs. Plaintiffs' motion requests some limited and directed testing of Defendants' factual positions and to develop their own claims for preparing a second motion for preliminary injunction if and as appropriate. For example, Plaintiffs seek to depose Warden Kline and Dr. Ivens because Defendants have submitted lengthy declarations holding these individuals out as the persons most knowledgeable regarding CAFCC and CoreCivic's COVID-19 protocols and practices (Docs. 16-2 through 16-7, 23-1, 48-1, 56-1 at 24-26). The Court agrees with Plaintiffs that Defendants "have total control over the evidence in this case - down to the method and frequency with which Plaintiffs can communicate with their counsel" (Doc. 59 at 4). Given such and the health stakes here, there is good cause for the limited accelerated and expedited discovery set forth below.

Further, the discovery allowed herein is not unduly burdensome. During this litigation which began on May 8, 2020, Defendants have demonstrated their ability to quickly gather and submit large volumes of evidence. As example, in just three days from this Court's Order (Doc. 6), Defendants responded to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction with 304 pages of supporting exhibits (Docs.

16-1 through 16-8).  In addition, Plaintiffs' proposed request for production number 2 requests certain surveillance footage (Doc. 49-1 at 5), and Defendants submitted numerous exhibits taken from various surveillance cameras at CAFCC when responding to Plaintiffs' earlier motion for preliminary injunction (*see, e.g.*, Docs. 16-5 at 2, 21-23; 16-6 at 78; 16-7 at 13, 16).  Because Warden Kline and Dr. Ivens have already spent the time necessary to prepare their declarations, requiring them to sit for up to four-hour video depositions should not require significant additional preparation or impose a significant burden.

As set forth below, the Court has extended timeframes proposed by Plaintiffs and has not fully adopted Plaintiffs' proposed discovery requests.  For example, the Court will not allow at this time the request for production of documents related to the hospitalization or death of three CAFCC staff because the request lacks good cause.

This Order should not be construed as a ruling on the numerous objections raised by Defendants to any specific proposed discovery request (Doc. 56-1 at 10-22).  The Court will address disputes about specific discovery requests and responses thereto if and when such disputes are ripe for decision.  Undersigned's usual discovery dispute procedure, set forth below, will be used for discovery disputes that arise from the discovery allowed by this Order.

Accordingly,

**IT IS HEREBY ORDERED** granting in part, as set forth herein, Plaintiffs' motion for accelerated and expedited discovery to support Plaintiffs' forthcoming motion for preliminary injunctive relief (Doc. 49).

**IT IS FURTHER ORDERED** that Defendants shall respond to Plaintiffs': interrogatories 1, 2 (for thirty days previous to response as applicable timeframe), 3, 4, 5, 6, and 7; requests for production 1, 2, 3, 5, 6 (but not relating to the testing of any particular person), and 7; and requests for admission 1 and 2 within fourteen (14) days from the date of this Order.

**IT IS FURTHER ORDERED** that within twenty-one (21) days from the date of this Order, Kris Kline, Warden of CoreCivic Inc.'s Central Arizona Florence Correctional

1  Complex, and Chief Medical Officer Dr. Keith Ivens shall appear for video depositions of
2  not more than four hours (of actual on the record time) each.
3        **IT IS FURTHER ORDERED** that the parties will enter into a reasonable
4  protective order for sensitive personal or medical information.
5        **IT IS FURTHER ORDERED** that for any information presenting security
6  concerns, responses to those requests will be considered "Attorneys Eyes Only" material
7  and will not be further disclosed without a Court Order;
8        **IT IS FURTHER ORDERED** that if a discovery dispute arises, including
9  regarding a reasonable protective order, counsel for the parties shall attempt to resolve such
10 by good faith personal consultation. If the discovery dispute cannot be fully resolved,
11 counsel may call and shall email undersigned's chambers, with a copy to all other counsel,
12 (602-322-7630; fine_chambers@azd.uscourts.gov) to request an on the record telephone
13 conference concerning the dispute. The email should state the nature of the dispute in one
14 to three sentences and shall not contain argument. The Court will seek to resolve the
15 dispute during the telephone conference and may enter appropriate orders on the basis of
16 the telephone conference. The Court may order written briefing before the telephone
17 conference and/or after the telephonic conference if the dispute does not resolve during the
18 telephone conference. The parties shall not file written discovery motions without leave
19 of Court.
20       Dated this 28th day of August, 2020.

_____
Honorable Deborah M. Fine
United States Magistrate Judge