Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Nicholas D. Acedo, Bar No. 021644
Jacob B. Lee, Bar No. 030371
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
jlee@strucklove.com

*Attorneys for Defendant Kris Kline*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| Claudia Romero-Lorenzo, et al., | NO. CV-20-00901-PHX-DJH (ESW) |
|---|---|
| Plaintiffs, | |
| v. | **DEFENDANT KLINE'S MOTION FOR RECONSIDERATION OF THE ORDER DENYING IN PART HIS MOTION FOR SUMMARY JUDGMENT (Dkt. 231)** |
| Brian Koehn, et al., | |
| Defendants. | |

In his Motion for Summary Judgment ("MSJ") and Reply in Support of MSJ (Dkt. 194, 221), Defendant Kris Kline, Warden of the Central Arizona Florence Correctional Complex ("CAFCC") ("Warden Kline"), argued that circumstances had changed since the beginning of the COVID-19 pandemic to the point that Plaintiffs' claims were moot. That remains true today, and to an even greater extent, as circumstances have continued to evolve to the point that no genuine dispute of material fact exists as to whether Warden Kline/CoreCivic[1] has acted in reckless disregard of Plaintiffs' rights. *See United States v. Malloy*, No. 07 Cr. 898 (VM), 2023 WL 2237504, at *4 (S.D.N.Y. Feb. 27, 2023) ("Finally,

---

[1] Because Warden Kline is named in his official capacity only (Dkt. 1 at ¶ 24), Plaintiffs must demonstrate that their injuries were caused by a policy, practice, or custom of CoreCivic, Inc. ("CoreCivic") which owns and operates CAFCC and employs Warden Kline. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

the federal government has indicated that the national emergency concerning the COVID-19 pandemic is likely to end on May 11, 2023. Nearing three years into the pandemic, the Court finds that the risks that were heightened at the onset of the pandemic have largely been reduced or been under control at this late stage of the pandemic."). Warden Kline therefore respectfully requests that this Court reconsider its March 30, 2023 Order denying in part his MSJ (Dkt. 231) by granting summary judgment in full.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     Factual Background**

Warden Kline filed his MSJ on August 8, 2022. (Dkt. 194.) Plaintiffs filed their Response on September 19, 2022, and Warden Kline filed his Reply on October 7, 2022. (Dkt. 200, 221.) On March 30, 2023, the Court granted the MSJ in part and denied it in part, finding genuine issues of material fact as to CoreCivic's alleged failures to "(i) offer boosters to CAFCC detainees at intake and use available electronic health records to recommend/schedule boosters for booster-eligible detainees, (ii) utilize available electronic health records to identify and target at risk/immunocompromised detainees for vaccinations and other COVID-19 protections, and (iii) stock and prescribe CDC- and NIH-recommended antiviral treatments for COVID-19 positive patients with at least one CDC-identified risk factor." (Dkt. 231.)

**A.     Updated CDC Guidance[2]**

While the MSJ was pending, on November 29, 2022, the Centers for Disease Control and Prevention ("CDC") updated its "Guidance on Management of COVID-19 in Homeless Service Sites and in Correctional and Detention Facilities." (*See* https://www.cdc.gov/

---

[2] Plaintiffs implicitly took the position that CDC guidance sets the standard of care in this case, as their Response to Warden Kline's MSJ repeatedly argued the various ways in which they believed Warden Kline and CoreCivic "violated" the guidance. (*See, generally,* Dkt. 200.) Should they attempt now to argue that current CDC guidance is irrelevant, the Court should disregard such arguments, as any permanent injunction that might be entered in this case would necessarily have to take into account current guidance rather than outdated guidance that is no longer in effect.

coronavirus/2019-ncov/community/homeless-correctional-settings.html, last accessed April 12, 2023.) The "Summary of Recent Changes" notes that the updated guidance "[c]ombines and replaces previous CDC guidance documents for COVID-19 in … correctional and detention facilities." (Id.) Compared to the version of the CDC's guidance in effect at the time of briefing on the MSJ, the updated guidance is much more relaxed, consistent with the nationwide decrease in the spread of the virus. (*See* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html, last accessed April 13, 2023) ("As of March 30, 2023, there are 25 (0.8%) counties, districts, or territories with a high COVID-19 Community Level, 279 (8.7%) with a medium Community Level, and 2,915 (90.5%) with a low Community Level.").[3]

The updated guidance makes clear that it is intended to "guide decisions about when to apply specific COVID-19 prevention actions," and, to that end, recommends consideration of community levels of COVID-19 along with several facility-level factors to "help decide if additional layers of protection are needed because of facility-specific risks." (Id.) This includes a recommendation to "[a]ssess what portion of people in the facility are more likely to get very sick from COVID-19, for example, due to underlying health conditions, older age, pregnancy, or poor access to medical care." (Id.) The updated guidance, however, does not specify any particular format for such tracking. (Id.)

With regard to prevention strategies, the updated guidance suggests both "prevention strategies for everyday operation" and "enhanced prevention strategies," and makes clear that imposition of enhanced prevention strategies requires balancing the need for COVID-19 prevention with "the impact from reducing access to services and programming." (Id.) It further recognizes that facilities "may not be able to apply all enhanced COVID-19 prevention strategies due to local resource constraints, facility and population characteristics, or other factors." (Id.) The updated guidance recommends implementation

---

[3] As of the filing of this Motion, the COVID-19 community level for Pinal County is low, as it is for the entire State of Arizona. (*See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/covid-by-county.html, last accessed April 13, 2023.)

1    of enhanced prevention strategies when COVID-19 community levels are high, when there
2    has been transmission of COVID-19 within the facility, or when indicated based on the
3    assessment of facility-specific factors. (Id.)

4        With regard to COVID-19 vaccines, the entirety of the guidance is: "Encourage and
5    enable staff, volunteers, and residents to stay up to date on COVID-19 vaccination. Where
6    possible, offer the vaccine onsite and support peer outreach to promote vaccination." (Id.)
7    No enhanced prevention strategies are suggested. (Id.)

8        With regard to COVID-19 treatment, the entirety of the guidance is: "Effective
9    treatments are now widely available and must be started within a few days after symptoms
10   develop to be effective. Support timely treatment for those eligible; facilities without onsite
11   healthcare capacity should plan to ensure timely access to care offsite." (Id.) No enhanced
12   prevention strategies are suggested, and nothing in the updated guidance even suggests, let
13   alone requires, that a correctional or detention facility maintain a stock of such treatments
14   onsite. (Id.)

15       **B.    Ending the National Emergency**

16       On January 9, 2023, U.S. Representative Paul Gosar of Arizona introduced
17   H.J.Res.7, a joint resolution terminating the national emergency declared by President
18   Trump on March 13, 2020 pursuant to the National Emergencies Act. (*See* https://www.
19   congress.gov/bill/118th-congress/house-joint-resolution/7/actions, last accessed April 12,
20   2023.) The bill passed in the U.S. House of Representatives on February 1, 2023, and in the
21   U.S. Senate on March 29, 2023. (Id.) While the bill was wending its way through Congress,
22   on February 10, 2023, President Biden announced that he intended to terminate the national
23   emergency on May 11, 2023. (*See* https://www.whitehouse.gov/briefing-room/presidential-
24   actions/2023/02/10/notice-on-the-continuation-of-the-national-emergency-concerning-the-
25   coronavirus-disease-2019-covid-19-pandemic-3/, last accessed April 12, 2023.)
26   Nevertheless, the joint resolution was presented to President Biden on April 5, 2023, and
27   he signed it into law on April 10, 2023, ending the national emergency regarding COVID-
28

19.[4] (Id; *see also* https://www.whitehouse.gov/briefing-room/legislation/2023/04/10/bill-signed-h-j-res-7/, last accessed April 12, 2023.)

### C. Ending the Public Health Emergency

On January 11, 2023, Secretary of Health and Human Services Xavier Becerra renewed the January 31, 2020 determination by former Secretary Alex Azar pursuant to the Public Health Service Act that a public health emergency for COVID-19 existed. (*See* https://aspr.hhs.gov/legal/PHE/Pages/covid19-11Jan23.aspx, last accessed April 12, 2023.) On or about March 2, 2023, however, the Department of Health and Human Services ("HHS") announced that it was planning for the public health emergency to expire at the end of the day on May 11, 2023. (*See* https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html, last accessed April 12, 2023.)

## II. Legal Argument

A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); LRCiv 7.2(g)(1) (allowing a motion for reconsideration of an order where there is a showing of manifest error or "new facts … that could not have been brought to [the Court's] attention earlier with reasonable diligence").

The Court denied Warden Kline's MSJ in part based on findings that genuine disputes of material fact existed as to CoreCivic's alleged failures with respect to boosters,

---

[4] Governor Ducey terminated Arizona's COVID-19 Declaration of Emergency on March 30, 2022. (*See* https://www.azdhs.gov/documents/preparedness/emergency-medical-services-trauma-system/reports/03-31-2022-covid-19-emergency-declaration-ends.pdf, last accessed April 12, 2023.)

tracking of high-risk or immunocompromised detainees, and availability of COVID-19 treatments. The declared end to the national emergency, the imminent (and scheduled) end of the public health emergency, changes to CDC guidance for correctional and detention facilities, and low COVID-19 community levels in 90.5% of counties, districts, and territories nationwide, including Arizona generally and Pinal County specifically, however, constitute new evidence[5] that could not have been brought to the Court's attention during summary judgment briefing and therefore warrants reconsideration of that denial. *See U.S. v. Perry*, No. 1:10-cr-216-SEB-KPF-1, 2021 WL 4593547, at *2 (S.D. Ind. Oct. 6, 2021) ("[E]ven if [the defendant] is returned to prison at some point in the future, … it will be when the official state of emergency for the COVID-19 pandemic has ended. If the pandemic has subsided enough that the state of emergency has been lifted, it is similarly likely that the risk to Mr. Perry from COVID-19 will also have subsided.").

### A. Boosters

The entirety of current CDC guidance on COVID-19 vaccines in correctional and detention facilities is: "Encourage and enable staff, volunteers, and residents to stay up to date on COVID-19 vaccination. Where possible, offer the vaccine onsite and support peer outreach to promote vaccination." (*See* https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html, last accessed April 12, 2023.) The summary judgment record shows that CAFCC follows this guidance.

It is undisputed that "[e]ffective March 31, 2021, vaccines and vaccine boosters are offered to all CAFCC detainees over eighteen." (Dkt. 231 at 13:5–7.) It is also undisputed that "[s]ince it began offering the COVID-19 vaccine to detainees, CAFCC has never run out of doses of the vaccine." (Id. at 13:8–9.) It is further undisputed that "information on

---

[5] The Court may take judicial notice of information posted on official government websites. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010) (taking judicial notice of information posted on public school district websites in ruling on a motion to dismiss); *see also* Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

1 how to obtain a booster is posted and appears in a handbook," and that "[t]o obtain a vaccine
2 or booster, detainees may submit a medical request form to the medical department, or if
3 they verbally request a vaccine from staff, they will be directed to submit a medical request
4 form." (Id. at 14:3–7.) There is no evidence that a detainee requesting a vaccine or booster
5 has been refused.

6 Plaintiffs cannot seriously contend that CoreCivic's efforts to make vaccines and
7 boosters available at CAFCC fail to "encourage and enable" Plaintiffs to get vaccines and
8 boosters, or that the COVID-19 vaccine and boosters are not available onsite. As a result,
9 Plaintiffs cannot prove at trial that CoreCivic's conduct was objectively unreasonable or
10 showed a reckless disregard for their rights, even if they prove that CoreCivic is not
11 explicitly offering boosters to detainees at intake. *See Fraihat v. U.S. Immigration &*
12 *Customs Enf't*, 16 F.4th 613, 636 (9th Cir. 2021); *Gordon v. Cty. of Orange*, 888 F.3d 1118,
13 1124-25 (9th Cir. 2018); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).
14 Such a showing requires more than mere lack of due care or a failure to perfectly follow all
15 CDC guidelines. *Fraihat*, 16 F.4th at 636, 647; *see also* Dkt. 231 at 37:24–28 ("'[T]he
16 Supreme Court has instructed that 'mere lack of due care by a [government] official' does
17 not 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment.'
18 *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)
19 (internal quotation marks and citation omitted)."). Because Plaintiffs cannot prove this
20 essential element of their claim, the Court should reconsider its denial of summary judgment
21 and grant Warden Kline summary judgment on this issue. *See Celotex Corp. v. Catrett*, 477
22 U.S. 317, 323 (1986).

23 **B. Tracking High-Risk or Immunocompromised Detainees**

24 Although updated guidance recommends that CoreCivic "[a]ssess what portion of
25 people in the facility are more likely to get very sick from COVID-19, for example, due to
26 underlying health conditions, older age, pregnancy, or poor access to medical care," it does
27 not specify any particular format for doing so. (*See* https://www.cdc.gov/coronavirus/2019-
28 ncov/community/homeless-correctional-settings.html, last accessed April 12, 2023.) It is

undisputed that individual medical files "contain information about each detainee's medical conditions such that providers are aware of the detainee's risk factors while they are treating them" and that "medical staff can produce reports of detainees by risk factor when there is a need to do so." (Dkt. 231 at 39:5–7.) And, as demonstrated above, it is undisputed that vaccines and boosters are available to all detainees at CAFCC.

Plaintiffs cannot seriously contend that CoreCivic is unaware of those detainees at CAFCC who are "more likely to get very sick from COVID-19." As a result, Plaintiffs cannot prove at trial that CoreCivic's conduct was objectively unreasonable or showed a reckless disregard for their rights, even if they prove that CoreCivic is not keeping a running list of such detainees. *See Fraihat*, 16 F.4th at 636; *Gordon*, 888 F.3d at 1124-25; *Castro*, 833 F.3d at 1071; *see also*, *e.g.*, *Criswell v. Boudreaux*, No. 120CV01048DADSAB, 2020 WL 7646405, at *21 (E.D. Cal. Dec. 23, 2020) ("[T]he court is particularly mindful that the question before it is not whether the court would implement different or better testing policies at the Jail, but rather whether defendant's actions in response to COVID-19 have been reasonable."). Again, perfect compliance with the updated guidance is not required. *Fraihat*, 16 F.4th at 636, 647; *see also* Dkt. 231 at 37:24–28. Because Plaintiffs cannot prove this essential element of their claim, the Court should reconsider its denial of summary judgment and grant Warden Kline summary judgment on this issue. *See Celotex*, 477 U.S. at 323.

### C. Availability of COVID-19 Treatments

The updated guidance recommends only that facilities "[s]upport timely treatment for those eligible," and that "facilities without onsite healthcare capacity should plan to ensure timely access to care offsite." (*See* https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html, last accessed April 12, 2023.) Nothing in the guidance requires a facility to keep a stock of such treatments onsite or requires that facility medical providers prescribe them to a certain percentage of the population. Nor could it, as the CDC's guidance on "COVID-19 Treatments and Medications" states that "[a] healthcare provider will help decide which treatment, if any,

8

1   is right for you," and that those wanting to take such medications should "[a]sk a healthcare
2   provider if medications to treat COVID-19 are right for [them]," as "[s]ome treatments
3   might have side effects or interact with other medications [they] are taking." (*See* https://
4   www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html, last
5   accessed April 12, 2023.)

6   It is undisputed that "CAFCC has access to [COVID-19] medications through local
7   pharmacies." (Dkt. 231 at 14:16–17.) There can be no genuine dispute that such access
8   allows for "timely treatment for those eligible." As a result, Plaintiffs cannot prove at trial
9   that CoreCivic's conduct was objectively unreasonable or showed a reckless disregard for
10  their rights, even if they prove that CoreCivic does not keep stocks of COVID-19
11  medications onsite. *See Fraihat*, 16 F.4th at 636; *Gordon*, 888 F.3d at 1124-25; *Castro*, 833
12  F.3d at 1071. Once again, perfect compliance with the updated guidance is not required.
13  *Fraihat*, 16 F.4th at 636, 647; *see also* Dkt. 231 at 37:24–28. Because Plaintiffs cannot
14  prove this essential element of their claim, the Court should reconsider its denial of
15  summary judgment and grant Warden Kline summary judgment on this issue. *See Celotex*,
16  477 U.S. at 323.

### III.   Conclusion

Both the national emergency declared by President Trump and the statewide emergency declared by Governor Ducey have been terminated, and the public health emergency declared by HHS is set to end in less than one month. Moreover, COVID-19 community levels are low throughout the entire State of Arizona, including in Pinal County. Whatever circumstances existed at the beginning of the pandemic to justify the filing of this lawsuit, CoreCivic never disregarded them, and they no longer exist. The CDC has updated its guidance with respect to COVID-19 to reflect these changed circumstances, and the undisputed evidence shows that CoreCivic is in compliance with that guidance on all three issues of fact the Court previously identified. Warden Kline therefore respectfully requests that the Court reconsider the portion of its March 30, 2023 Order denying his MSJ, grant summary judgment in his favor, and dismiss this lawsuit in its entirety with prejudice.

DATED this 13th day of April, 2023.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/ Jacob B. Lee
    Daniel P. Struck
    Rachel Love
    Nicholas D. Acedo
    Jacob B. Lee
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    *Attorneys for Defendant Kris Kline*

# CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**PERKINS COIE LLP**

| | |
|---|---|
| Jean-Jacques Cabou | jcabou@perkinscoie.com |
| Margo R. Casselman | mcasselman@perkinscoie.com |
| Mathew R. Koerner | mkoerner@perkinscoie.com |
| Thomas Ryerson | tryerson@perkinscoie.com |

*Attorneys for Plaintiffs*

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

| | |
|---|---|
| Emma A. Andersson | eandersson@aclu.org |
| Alejandro Agustin Ortiz | ortiza@aclu.org |
| David C. Fathi | dfathi@aclu.org |
| Corene T. Kendrick | ckendrick@aclu.org |
| Kyle Virgien | kvirgien@aclu.org |

*Attorneys for Plaintiffs*

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA**

| | |
|---|---|
| Jared G. Keenan | jkeenan@acluaz.org |
| Christine K. Wee | cwee@acluaz.org |

*Attorneys for Plaintiffs*

**GLENN B. McCORMICK**
**Acting United States Attorney District of Arizona**

| | |
|---|---|
| William Charles Staes | William.Staes@usdoj.gov |

*Attorneys for the Federal Defendants*

/s/ S. Berry