Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Nicholas D. Acedo, Bar No. 021644
Jacob B. Lee, Bar No. 030371
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
jlee@strucklove.com

*Attorneys for Defendant Kris Kline*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| Claudia Romero-Lorenzo, et al., | NO. CV-20-00901-PHX-DJH (ESW) |
|---|---|
| Plaintiffs, | **DEFENDANT'S JOINT RESPONSE TO PLAINTIFFS' SUPPLEMENTAL PRETRIAL BRIEF (DKT. 304)** |
| v. | |
| Brian Koehn, et al., | |
| Defendants. | |

Plaintiffs' Supplemental Brief (Dkt. 304) in response to the Court's January 30, 2024 Order fails to: (1) show that the named Plaintiffs should be permitted to "continue to represent this class even though they have all been released from custody," and (2) provide a satisfactory explanation as to "why they never sought to substitute new class representatives" following their releases. (Dkt. 302.) Defendants, Kris Kline, Warden of the Central Arizona Florence Correctional Complex ("CAFCC"), and Van Bayless, Acting U.S. Marshal for the District of Arizona; Donald W. Washington, Director of the U.S. Marshals Service; and Collette S. Peters, Director of the Federal Bureau of Prisons (collectively, "Federal Defendants"), therefore respectfully request that the Court decertify the Pretrial Class and dismiss the remaining Fifth Amendment claim.

///

///

I.     **Factual Background and Procedural History**

Plaintiffs filed their Complaint in this matter on May 8, 2020, referring to both the pandemic and the government's response to it as "unprecedented." (Dkt. 1 at Section V(A) and ¶ 42.) President Trump declared a national state of emergency on March 13, 2020, and Governor Ducey declared a statewide state of emergency on March 11, 2020. (Id. at ¶¶ 40, 42.) On March 15, 2020, Governor Ducey further ordered all public schools closed, and on March 30, 2023, he implemented a statewide "stay-at-home" order. (Id. at ¶ 42.)

There were no vaccines or treatments for COVID-19 at the time. (Id. at ¶¶ 4, 28.) As such, the recommended measures for curbing the spread of COVID-19 were social distancing, masking, and hygiene/sanitation. (Id. at ¶¶ 4, 28.)

Circumstances related to COVID-19, however, as they have since the start of the pandemic, continue to evolve. Current circumstances bear no resemblance whatsoever to those that existed in May 2020. In fact, current circumstances bear no resemblance to those that existed in March 2023, when the Court filed its Order on Defendants' Motions for Summary Judgment, or to those that existed in May 2023, when the Court filed its Order on Warden Kline's Motion for Reconsideration. (Dkt. 231, 240.) Plaintiffs concede that it is current circumstances that matter most. (*See* Dkt. 248 at 2:17–20; Dkt. 304 at 5:15–16.) *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994) ("[T]he subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct."); *see also Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996) ("[W]e determine questions of mootness in light of the present circumstances where injunctions are involved.").

Plaintiffs designated named Plaintiffs Romero-Lorenzo, Peuplie, Ciecierski, and Enos to represent the Pretrial Class. (Dkt. 69 at 4–5.) By the time the Court ruled on the Motion for Class Certification on November 3, 2020, Plaintiff Romero-Lorenzo had been convicted and sentenced, such that she was no longer a member of the Pretrial Class. (Id. at 17, 19.) Plaintiff Peuplie was transferred from CAFCC on May 19, 2021. (Dkt. 192 at ¶ 321.) Plaintiff Ciecierski was released from CAFCC on April 12, 2021. (Id. at ¶ 322.)

1  Plaintiff Enos was released from CAFCC on July 1, 2021. (Id. at ¶ 323.) Although Plaintiffs
2  argue that Plaintiff Ciecierski "was last incarcerated at CAFCC in April of 2023," they
3  provide no information as to how long he was at CAFCC at that time, and in any event, they
4  concede that he has not been at CAFCC for nearly a year. (Dkt. 304 at 5.)
5        Changes to the availability of COVID-19 antiviral medications such as Paxlovid and
6  updates to COVID-19 vaccines since the named Plaintiffs left CAFCC have rendered
7  obsolete the three issues identified by the Court for trial in its March 30, 2023 Order. (Dkt.
8  231 at 46; Dkt. 279–280.) More importantly for purposes of the issues currently before the
9  Court, these changes have rendered obsolete the named Plaintiffs' individual claims and
10 their knowledge of Defendants' response to COVID-19 with respect to these issues at
11 CAFCC.
12 **II.   Legal Argument**
13       The Court retains "broad discretion" to decertify a class at any time after
14 certification. *See Heffelfinger v. Elec. Data Sys. Corp.*, 492 F. App'x 710, 714 (9th Cir.
15 2012); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class
16 certification may be altered or amended before final judgment."); *Armstrong v. Davis*, 275
17 F.3d 849, 871 n.28 (9th Cir. 2001) ("[Rule 23] provides district courts with broad discretion
18 to . . . revisit … certification throughout the legal proceedings before the court."); *Gen. Tel.*
19 *Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is
20 entered, the judge remains free to modify it in the light of subsequent developments in the
21 litigation."). The standard to decertify is the same as to certify: the requirements of Rules
22 23(a) and (b) must be met for the case to continue as a class action. *Makaeff v. Trump Univ.,*
23 *LLC*, 309 F.R.D. 631, 635 (S.D. Cal. 2015) (citing *Marlo v. United Parcel Serv., Inc.*, 639
24 F.3d 942, 947 (9th Cir. 2011)). The Court may consider "subsequent development in the
25 litigation" on a motion to decertify. *Falcon*, 457 U.S. at 160. The Pretrial Class bears "the
26 burden of demonstrating compliance with class certification requirements even on a motion
27 to decertify a class." *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 942 (C.D. Cal.
28 2022) (*citing Marlo*, 639 F.3d at 947.)

### A. The Court Should Decertify the Pretrial Class for Lack of a Proper Representative.

Rule 23(a) allows "[o]ne or more members of a class" to sue "as representative parties on behalf of all members only if" the requirements of (a)(1)-(4) are met, including (a)(3)'s typicality requirement and (a)(4)'s adequacy requirement. In other words, a class must have a representative:

> Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements —numerosity, commonality, typicality, and adequate representation— effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (internal citations and quotations omitted).

"The typicality requirement ensures that 'the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2015 WL 9480475, at *8 (N.D. Cal. Dec. 23, 2015) (quoting *Falcon*, 457 U.S. at 158 n.13). "[A] plaintiff who has no cause of action against the defendant cannot 'fairly and adequately protect the interests' of those who do have such causes of action." *Id.* (quoting *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973)). In other words, a "class representative must be part of the class." *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977); *see also Kim v. Allison*, 22-55345, 2023 WL 8405866, at *4 (9th Cir. Dec. 5, 2023) ("Before certifying a class, a district court must ensure that the class satisfies the prerequisites of Rule 23, including that the representative parties will fairly and adequately protect the interests of the class.").

Here, the Pretrial Class lacks a class representative whose own claims are typical of the class's claims, and who can adequately represent the class's interests. Plaintiffs attempt to frame this as a mootness issue, but their argument misses the mark. The problem is not that Plaintiffs no longer have valid individual claims, but that their releases from CAFCC eliminate any typicality that may have existed in November 2020 and render them unable

1  to adequately represent the class with respect to the remaining issues for trial.

2  Since the named Plaintiffs' departures from CAFCC, the FDA has approved
3  "updated vaccines" that replaced the previous bivalent vaccines in September 2023. (Dkt.
4  279 at 5.) As a result, "boosters" no longer exist, and the FDA anticipates that these new
5  COVID-19 vaccines "may need to be updated annually, as is done for the seasonal influenza
6  vaccine." (Id.) Thus, a detainee's personal COVID-19 vaccine history is largely irrelevant,
7  and the need for tracking and recommending booster eligibility for detainees no longer
8  exists. (Id.) Unlike with prior versions of the vaccines, the updated vaccines are
9  recommended for everyone 12 years and older, whether they received a COVID-19 vaccine
10 prior to September 12, 2023 or not (in other words—everyone is eligible to receive the
11 updated vaccine), and the CDC considers all such people to be "up to date" on their COVID-
12 19 vaccines after receipt of one updated vaccine. (Id. at 6.)

13 Similarly, since the named Plaintiffs' departures from CAFCC, Paxlovid has
14 transitioned from being just an EUA-labeled medication and become available on the
15 commercial market. (Id. at 3–4.) As a result, where CAFCC could previously only obtain
16 Paxlovid on a per-patient basis upon issuance of a prescription by a licensed independent
17 provider, it now includes Paxlovid on its Approved Stock Order Form and maintains a full
18 course of the medication (i.e., 30 pills—three pills twice a day for five days) in the facility
19 pharmacy, ready to be administered to those to whom it is prescribed. (Id. at 3–5.)

20 When the current named Plaintiffs were detained at CAFCC, none of these facts
21 existed. By conceding that no vaccines or treatments for COVID-19 existed when they filed
22 the Complaint in this matter (Dkt. 1 at ¶¶ 4, 28), Plaintiffs implicitly concede that the named
23 Plaintiffs were detained at CAFCC under conditions that were different in every relevant
24 way from those under which current detainees are held.[1]

---

[1] To further highlight the differences between circumstances at the height of the pandemic and those that exist today, CAFCC has only one active case of COVID-19 among USMS detainees (with a total USMS population of 2,989 detainees) and only two active cases in the entire facility (with a total population of 3,416 detainees) as of the date of filing this Response. The COVID-19 hospitalization rates in Pinal and Maricopa Counties, as

1    Plaintiffs attempt to avoid this inconvenient truth and the Court's broad discretion to
2 decertify the class by arguing that the U.S. Supreme Court's statement in *Gen. Tel. Co. of*
3 *the Sw. v. Falcon*, 457 U.S. 147, 160 (1982), that "the judge remains free to modify it in the
4 light of subsequent developments in the litigation" is mere dicta. Although the Court's
5 ruling in that case did not turn on this statement, the statement is nevertheless true, and
6 Plaintiffs have failed to show otherwise.

7    Plaintiffs further complain that Defendants have not cited to any cases in which a
8 court ruled that a claim "can become atypical if the class representative would not have
9 standing to file it as a new claim today." But this is not surprising, as the situation here is
10 far from common. The COVID-19 pandemic has been widely recognized—including by
11 Plaintiffs in their own Complaint—as unprecedented. And unlike class actions that deal
12 with prison or jail conditions, employment conditions, etc., circumstances related to this
13 unprecedented pandemic have been in a constant state of flux from the outset, with
14 recommendations for responding to COVID-19 changing as knowledge about the virus
15 increases—sometimes on a daily basis in the early stages of the pandemic. Thus, this case
16 is distinguishable from *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), in which the policies
17 and procedures at issue were fairly static and applied to all medical, dental, and mental
18 health care provided by a state prison system, as opposed to the constantly evolving
19 pandemic response policies and procedures in place at a single facility.

20    Although the named Plaintiffs' claims may have been typical of the Pretrial Class's
21 claims over three years ago in November 2020 when the Court certified the class (Dkt. 69)
22 (which Defendants do not concede), that is no longer true. The "substantial risk[s] of serious
23 harm" the named Plaintiffs alleged in their Complaint—i.e., from failure to require social
24 distancing, mask use, and hygiene—no longer exist. Circumstances today have evolved to
25 the point that they would be unrecognizable to the named Plaintiffs. Indeed, the three issues

---

27 determined by the CDC, remains at "low." *See* https://covid.cdc.gov/covid-data-tracker/
28 #maps_new-admissions-rate-county, last accessed February 12, 2024.

the Court identified for trial in its Order on Defendants' Motions for Summary Judgment were not even alleged in the Complaint. (*See* Dkt. 1 and 231.)

The named Plaintiffs are therefore lacking a stake in the outcome of the lawsuit due to their releases and unable to provide any testimony as to the issues identified by the Court (*see* Fed. R. Evid. 602 (requiring a witness to have personal knowledge of the matters to which he testifies)). Any testimony they may provide is of no use to the Court in determining whether current circumstances support the need for declaratory and injunctive relief as to those issues. The named Plaintiffs simply cannot satisfy the typicality requirement, and the Court should decertify the Pretrial Class accordingly. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (requiring a class representative to "be part of the class and possess the same interest and suffer the same injury as the class members").

Nor can they satisfy the adequacy requirement. "[A] named class representative may still adequately represent the class, for purposes of Rule 23, even if the representative's personal claims have become moot, at least until such time that there is a determination that the representative is no longer adequate." *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 619 (6th Cir. 2013). Part of the adequacy requirement is that "the proposed class representative must have an interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Any interest the named Plaintiffs may claim to have in the outcome of the litigation is belied by their requests to be excused from both settlement conferences that have been set in this case and to leave the handling of the negotiations to counsel (see below).[2] Now that they have been released, the named Plaintiffs appear to be wholly uninterested in what happens. Because the Pretrial Class lacks proper class representatives whose claims are typical of the class and who will adequately represent the class's interests, the Court should decertify the class.

---

[2] Both settlement conferences were ultimately vacated as futile. (Dkt. 171, 244.)

7

**B.     The Court Should Dismiss the Remaining Claims.**

Defendants have raised the issue of Plaintiffs' releases and their effects on Plaintiffs' ability to prosecute their claims numerous times over several years. On August 11, 2020, in their Motion to Dismiss, Defendants argued that Plaintiff Lucero-Gonzalez's and Plaintiff Romero-Lorenzo's claims were moot and should be dismissed due to Plaintiff Lucero-Gonzalez's release from CAFCC and Plaintiff Romero-Lorenzo's post-Complaint sentencing. (Dkt. 48 at 6–7.) Rather than acknowledging these facts and seeking to identify new class representatives, Plaintiffs blamed Defendants for their failure to identify new representatives and asked the Court to certify both the Pretrial and Post-Conviction Classes without a separate representative for the Post-Conviction Class. (Dkt. 58 at 9–10 and n.6; Dkt. 69 at 16–17.)

Defendants next raised the issue in July 2023 in the lead-up to the settlement conference that was then set for July 17, 2023. (Dkt. 231, 234, 235.)[3] Several weeks before the settlement conference, Plaintiffs asked Defendants for their positions as to Plaintiffs' request that they be excused from personally attending the settlement conference, leaving it to their attorneys to negotiate and approve a settlement. Counsel for Defendants questioned Plaintiffs' counsel's ability to negotiate a settlement without input from the class representatives and asked whether Plaintiffs intended to substitute new representatives. Plaintiffs' counsel responded that they did not intend to do so and believed they could negotiate and agree to a settlement without the named Plaintiffs present.

Defendants again raised the issue on November 30, 2023, when Warden Kline asked Plaintiffs whether they planned to move to substitute new class representatives, and if so, whether that impacted Plaintiffs' position as to the case's trial readiness. (Dkt. 280 at ¶ 53.) On December 11, 2023, having received no response, Warden Kline sent a follow-up request, noting the importance of resolving the issue in light of the Court's recent pretrial

---

[3] Plaintiffs made an identical request in April 2022 in the lead-up to the settlement conference that was then set for April 19, 2022 (Dkt. 165), but the parties did not specifically discuss substitution of new class representatives at that time.

deadlines. (Id. at ¶ 54.) Plaintiffs responded on December 12, 2023, taking the position that the Court stated that they would be permitted to substitute new class representatives, but that doing so "is neither a mandatory requirement nor a reason to delay trial." (Id. at ¶ 55.)

Warden Kline replied on December 13, 2023. (Id. at ¶ 56.) Citing legal authority and practical considerations regarding the need for new class representatives, Warden Kline again asked Plaintiffs whether they intended to move to substitute new class representatives. (Id. at ¶ 57.) Plaintiffs never responded, and they have yet to move to substitute new class representatives, taking the position in response to the Court's January 30, 2024 Order that they are not required to do so, despite the Court's apparent belief that they do. (Id. at ¶ 58; Dkt. 302, 304.)

Plaintiffs have had ample opportunity to move to substitute new class representatives but have repeatedly failed—and even refused—to do so. By their own admission, Plaintiffs made no attempts to identify new representatives until November 2023, again appearing to blame Defendants for not providing them with the information they needed to do so sooner. Conspicuously absent from their Supplemental Brief, however, is any indication that they requested such information and were refused, or that the legal phone call procedures they claim have slowed their efforts were new or unexpected. In support of their suggestion that CAFCC's legal phone call procedures prevent them from speaking to potential new class representatives, Plaintiffs provide only the unfounded assumptions of counsel and a citation to *Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. CV 22-3118, 2023 WL 1438376, at *16 (D.D.C. Feb. 1, 2023). But the assumptions of counsel are not evidence, and *Americans for Immigrant Just.* is irrelevant, as it has to do with claims of immigration detainees' access to their attorneys. Plaintiffs here, however, fail to show that the phone call procedures are to blame. It is just as likely—if not more so—that the detainees received the messages and simply decided not to call during the designated times. Because Plaintiffs have failed and/or refused to timely move to substitute new class representatives, the Court should dismiss the remaining claims after decertifying the class.

### C. Defendants Do Not Consent to Plaintiffs' Proposal.

Plaintiffs' failure to address these glaring issues after having them brought to their attention repeatedly over the past several years belies their stated intent to "move the remaining issues to trial as quickly as possible." In any event, Defendants do not consent to Plaintiffs' proposals to: (1) "present testimony from people in custody at CAFCC as of the trial date" even though they were not timely disclosed or (2) brief substitution of new class representatives on an expedited basis.

As to the first proposal, Defendants are entitled to know who Plaintiffs intend to call in support of their claims at trial and to have an opportunity to (1) challenge the appointment of the new representatives and (2) prepare to question them at trial if the Court approves them. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). Although Plaintiffs try to downplay the significance of class representatives at trial, "[i]n a class-action lawsuit, Rule 23(b)(2) enables a trial court to determine the appropriateness of system-wide relief based on the individual experiences of the named plaintiffs." *Armstrong*, 275 F.3d at 871.

As to the second proposal, Plaintiffs' proposed schedule is unworkable and improperly one-sided. After having known for several years that the named Plaintiffs were no longer at CAFCC, and after working to identify new class representatives and/or witnesses for the past several months, Plaintiffs request an additional month to prepare their motion to amend the Complaint. Critically, Plaintiffs leave their Supplemental Brief vague as to the scope of this motion. One possibility is that Plaintiffs will move to amend the Complaint only as to the identities of the named Plaintiffs and class representatives. Another possibility, however, is that Plaintiffs will move to amend the Complaint to add more current claims. But even if Plaintiffs only do the former, they still propose that Defendants have only one week to investigate the proposed new class representatives and marshal a response, after which Plaintiffs will have another week to file their Reply.

Defendants cannot agree to this proposal, as Plaintiffs should not be rewarded for their dilatory behavior, and Defendants should have a full and fair opportunity to brief the issues without the artificial and one-sided constraints Plaintiffs propose. Plaintiffs' proposal

also assumes that the Court will not only rule on the motion to amend immediately, but that it will grant it so that trial can start in early April. To the extent the Court does not decertify the class and dismiss the remaining claims, it should set a proper briefing schedule regarding the substitution of new class representatives that does not prejudice Defendants' ability to investigate the proposed new class representatives and either stipulate to them or present reasoned arguments as to why they should not be named.

### III. Conclusion

In light of the changed circumstances since the Court's March 30, 2023 Order on Defendants' Motions for Summary Judgment and Plaintiffs' failure to timely move to substitute new class representatives, the Court should decertify the Pretrial Class and dismiss the remaining claims.

DATED this 12th day of February 2024.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By */s/ Jacob B. Lee*
    Daniel P. Struck
    Rachel Love
    Nicholas D. Acedo
    Jacob B. Lee
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

*Attorneys for Defendant Kris Kline*

GARY M. RESTAINO
United States Attorney District of Arizona

By */s/ William C. Staes*
    WILLIAM C. STAES
    Assistant U.S. Attorney

*Attorneys for the Federal Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**PERKINS COIE LLP**

| | |
|---|---|
| Jean-Jacques Cabou | jcabou@perkinscoie.com |
| Margo R. Casselman | mcasselman@perkinscoie.com |
| Mathew R. Koerner | mkoerner@perkinscoie.com |
| Thomas Ryerson | tryerson@perkinscoie.com |
| David G. Treadaway | dtreadaway@perkinscoie.com |
| Jacinda Stephens | jstephens@perkinscoie.com |

*Attorneys for Plaintiffs*

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

| | |
|---|---|
| Nancy Rosenbloom | nrosenbloom@aclu.org |
| David C. Fathi | dfathi@aclu.org |
| Corene T. Kendrick | ckendrick@aclu.org |
| Kyle Virgien | kvirgien@aclu.org |

*Attorneys for Plaintiffs*

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA**

| | |
|---|---|
| Jared G. Keenan | jkeenan@acluaz.org |

*Attorneys for Plaintiffs*

**GARY M. RESTAINO**
**United States Attorney District of Arizona**

| | |
|---|---|
| William Charles Staes | William.Staes@usdoj.gov |

*Attorneys for the Federal Defendants*

　　　　　　　　　　　　　　　　　　　　　　/s/ Kim Penny